## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **LASHUNDA R. BORDEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No.:  1:16-CV-0163-VEH** |
| | ) | |
| **CHEAHA REGIONAL MENTAL** | ) | |
| **HEALTH, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## MEMORANDUM OPINION

## I.    INTRODUCTION

### A.    Summary of Ms. Borden's Claims

On January 29, 2016, Plaintiff LaShunda R. Borden ("Ms. Borden"), who is representing herself, initiated this job discrimination lawsuit against Defendant Cheaha Regional Mental Health, Inc. ("Cheaha"). (Doc. 1). Ms. Borden filed an amended complaint (doc. 6) on February 23, 2016, that was entered on March 25, 2016.[1] As amended, her lawsuit asserts violations of Title VII and 42 U.S.C. § 1981.

---

[1]   The Court dismissed Ms. Borden's case on March 8, 2016, for her failure to prosecute. (Docs. 3, 4). On March 25, 2016, Ms. Borden's lawsuit was reopened (doc. 5) upon discovering that her amended complaint (doc. 6) had been mistakenly treated like an entirely separate action and was assigned a new case number of 1:16-CV-0300-VEH. (Doc. 5 at 2). Upon reopening this litigation, the Court directed the Clerk to close 1:16-CV-0300-VEH. *Id.*

(*Id.* at 4).[2]

While this amended pleading is not organized into consecutively numbered counts, a broad reading of it confirms that Ms. Borden is primarily asserting two wrongful discharge claims against Cheaha–one on the basis of race and the other on the basis of retaliation for previously filing an EEOC charge. (*See id.* at 3 ("Essentially [Cheaha] was trying to find a way to fire me because I had filed an EEOC charge."); *id.* at 4 ("[Cheaha] placed me on suspension and I was subsequently terminated on December 17, 2014."); *id.* ("I was targeted due to my race and because I had filed an EEOC [Charge] of Discrimination previously[.]")).

### B. Summary of Pending Motions

Pending before the Court is Cheaha's Motion for Summary Judgment (doc. 26) (the "Rule 56 Motion") filed on May 31, 2017. Cheaha filed its brief (doc. 27) and evidentiary submission (doc. 28) on this same date. On June 1, 2017, the Court entered its customary *pro se* summary judgment scheduling order (doc. 29) that gave Ms. Borden special notice of her right to respond to Cheaha's Rule 56 Motion with affidavits or other opposing evidence and warned her about the consequences of not adequately responding to it. Ms. Borden opposed the Rule 56 Motion on June 30, 2017. (Doc. 31). Cheaha followed with its reply brief (doc. 32) on July 24, 2017.

---

[2] All page references to Doc. 6 correspond with the Court's CM/ECF numbering system.

Cheaha also moved to strike Ms. Borden's evidentiary materials (the "Strike Motion"), including her purported affidavit, as procedurally defective and for other reasons. (Doc. 33 at 1-2 ¶¶ 2-5).

The Court subsequently discovered that Cheaha's brief in support of its Rule 56 Motion was missing multiple pages. (Doc. 34 at 1). The Court also agreed with Cheaha that Ms. Borden had "failed to substantially comply with Appendix II of its Uniform Initial Order . . . ." (*id.* at 2) and that her affidavit was procedurally deficient. (*Id.* at 3). In light of these multiple problems, the Court ordered Cheaha to file a corrected brief (*id.* at 1), allowed Ms. Borden to refile her opposing materials (*id.* at 3), and granted Cheaha's Strike Motion to that limited extent. *Id.*

Cheaha then filed its corrected brief on November 2, 2017. (Doc. 35). Ms. Borden filed her opposing materials on November 29, 2017. (Docs. 38, 39). Cheaha followed with a second Motion To Strike (doc. 42) (the "Second Strike Motion") and its reply (doc. 43) on December 14, 2017.

For the reasons explained below, Cheaha's Second Strike Motion is due to be granted in part and otherwise denied. Further, its Rule 56 Motion is due to be granted in part and otherwise termed as moot.

## II.   FACTUAL BACKGROUND[3]

Cheaha was a public, non-for-profit corporation governed by a twenty-one member Board of Directors (the "Board").[4] AF No. 2.1.[5] The Board was appointed by local governments under Alabama Act 310 of the 1957 Alabama Legislature. AF No. 2.2. Cheaha provided a continuum of services for persons with intellectual

---

[3] Keeping in mind that when deciding a motion for summary judgment the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the Court provides the following statement of facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party). This statement does not represent actual findings of fact. *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007). Instead, the Court has provided this statement simply to place the Court's legal analysis in the context of this particular case or controversy.

[4] "[Cheaha] was merged into Altapointe Health Systems, Inc. on or about July 29, 2016." (Doc. 28 at 5 ¶ 3). (**NOTE:** All page references to Doc. 28 correspond with the Court's CM/ECF numbering system.)

[5] Under Appendix II of the Court's Uniform Initial Order (Doc. 11) entered on April 26, 2016, "[a]ll statements of fact must be supported by specific reference to evidentiary submissions." (*Id.* at 16). The designation "AF" stands for admitted fact and indicates a fact offered by Cheaha that it has adequately supported through citations to underlying evidence as Appendix II mandates. For Ms. Borden, more specifically, this means that "[a]ny statements of fact that are disputed by the non-moving party must be followed by a specific reference to those portions of the evidentiary record upon which the dispute is based." (*Id.* at 17). Consequently, whenever Ms. Borden has inadequately asserted a dispute over a fact that Cheaha has otherwise substantiated with an evidentiary citation, the Court has reviewed the cited evidence and, if it in fact fairly supports Cheaha's factual assertion, has accepted Cheaha's fact. On the other hand, whenever Ms. Borden has adequately disputed a fact offered by Cheaha, the Court has reviewed the evidence cited by Ms. Borden and, if it in fact fairly supports her factual assertion, has accepted Ms. Borden's version. The Court's numbering of admitted facts (*e.g.*, AF No. 1) corresponds to the numbering of Cheaha's statement of undisputed facts as set forth in Doc. 35 and responded to by Ms. Borden in Doc. 38. A number following a decimal point corresponds to the particular sentence within the numbered statement of facts. For example, (AF No. 2.2) would indicate the second sentence of paragraph 2 of Cheaha's statement of undisputed facts is the subject of the Court's citation to the record.

disabilities, serious mental illness, and substance abuse problems in a four-County area in east Alabama, which included Clay, Coosa, Randolph, and Talladega Counties. AF No. 2.3. As part of its outpatient mental health services, Cheaha operated four separate outpatient clinics located in Sylacauga, Lineville, Talladega, and Roanoke. AF No. 3.

At the time of her discharge, Ms. Borden was employed in the position of Consumer Clerk[6] at Cheaha's Talladega outpatient clinic. (Doc. 39 at 64).[7] This outpatient clinic provided mental health services to persons residing in Talladega County and the surrounding area (referred to as "consumers"). AF No. 4.2. Many of these consumers were indigent and had no other available source of treatment. AF No. 4.3. The Talladega clinic also included a professional staff consisting of a therapist, part-time psychiatrist, and a Certified Registered Nurse Practitioner. AF No. 4.4.[8]

---

[6] Cindy Atkinson ("Ms. Atkinson"), who "was the Executive Director of [Cheaha] during Ms. Borden's employment" (doc. 28 at 1 ¶ 4), indicates in her affidavit that "Administrative Support" was Ms. Borden's last position held at Cheaha. (*Id.* at 6 ¶ 8). The Court's review of the duties for either job title does not reveal a meaningful difference between Consumer Clerk or Administrative Support. Nonetheless, the Court uses Consumer Clerk as that position name is consistent with Ms. Borden's opposing evidence. (Doc. 39 at 64).

[7] All page references to Doc. 39 correspond with the Court's CM/ECF numbering system.

[8] The Court acknowledges that in her opposition to the Rule 56 Motion, Ms. Borden has attempted to dispute this fact (and others) offered by Cheaha. (*See* Doc. 38 at 6 ¶ 4 ("**I dispute this statement** . . . .")). (**NOTE:** All page references to Doc. 38 correspond with the Court's CM/ECF numbering system.) However, Ms. Borden offers no underlying evidence to substantiate her

As listed on the position description for Consumer Clerk, Ms. Borden's job

"**DUTIES AND RESPONSIBILITIES**" were:

**ACCOUNTS RECEIVABLE**
1. Ensures confidentiality is maintained in the administrative process.
2. Verbally requests correct payment/co-pay from each OP consumer.
3. Collects and records consumer payments.
4. Provide[s] receipts to consumers.
5. Drops each collection in the safe as it is received.
6. Prepares/makes a deposit at least once per week or as needed.
7. Reconciliation of deposits and fees weekly.
8. Ensures all accounts receivable processes follow [Cheaha] policies, maintaining detailed paperwork.
9. Notifies supervisor and Business Manager of any discrepancies related to accounts receivable process.
10. Notifies supervisor of any issues with fee collection.

**GENERAL OFFICE DUTIES**[9]

1. Reports and staffs any concerns and/or problems as they arise with community relationships.
2. Completes administrative review at 6 months and closes all files following center policy.

---

purported factual challenge while Cheaha has adequately supported this fact through Ms. Atkinson's affidavit. (Doc. 28 at 6 ¶ 8). Consequently, the Court has treated this fact as admitted by Ms. Borden consistent with the evaluative procedures set out in footnote 5, *supra*.

[9] The lack of consecutive numbering for **GENERAL OFFICE DUTIES** between paragraphs 8 and 11 is consistent with the underlying document filed into the record. (Doc. 39 at 66). Additionally, the duties listed in paragraphs 24-26 for this section of the job-description document are not restated here because they are identical to those descriptions contained in paragraphs 20-22, respectively. (*Compare* Doc. 39 at 66 ¶¶ 20-22 (describing duties associated with "potential crises", "Doctor Day", and "non-clinical oversight", *with id.* at 67 ¶¶ 24-26 (same)).

3. Copies and prepares and sends out disability determination paperwork in a timely manner.

4. Copies and prepares claims from Lawyers and outside sources following the center Release of Information policy.

5. Completes initial contacts in a timely manner as needed.

6. Follows schedule related to mail delivery and pick up.

7. Switchboard operator as needed following center protocol.

8. Assists in ensuring all cris[e]s are seen in a timely manner.

11. Assist[s] consumers with problems/concerns as needed.

12. Assist[s] with checking billing and taking to business office as directed.

13. Provide[s] administrative Review at 6 month and closure keeping all forms as needed.

14. Provide[s] back up for setting appointments.

15. Assist[s] with the doctor schedule as needed.

16. Enures all office duties are performed as assigned.

17. Serves as a liaison between the Business Office and the Sylacauga Outpatient Office.

18. Serves as a liaison between the direct care staff and support staff, ensuring an effective and smooth office flow.

19. Ensures confidentiality is maintained in the administrative process.

20. Works with Coordinator/Therapist to ensure all potential crises are screened and handled appropriately.

21. Assists doctors and center nurse with Doctor Day.

22. In the absence of the Coordinator, provides non-clinical oversight of office and ensures services are provided appropriately.

23. Ensures confidentiality is maintained in the

administrative process.

**TEAM WORK:**

  1. Establishes and maintains professional working relationships with staff, community agencies, and other professionals in the community. Exemplifies professional conduct as a representative of [Cheaha], responding to community needs and requests in a timely manner.
  2. Observes and follows all center policies and procedures.
  3. Performs other relevant duties as assigned.

(Doc. 39 at 66-67). This job description further indicated that "Job Duties are subject to change based on office needs." (Doc. 39 at 67).

As summarized by Ms. Atkinson, Ms. Borden's job duties and responsibilities at the Talladega location generally included:

  a. Properly and efficiently answering the telephone. There were occasionally instances where calls seeking emergency assistance were received from [c]onsumers or others dealing with issues pertaining to [c]onsumers.

  b. Properly and efficiently managing scheduling appointments including issues that arose due to conflicts and communicating with the [c]onsumers and professional staff to make sure that the [c]onsumers understood when their appointments were set and handling the rescheduling of any appointments as may have been necessary, so that the professional staff was utilized to its fullest capacity.

  c. Properly and efficiently managing the reception desk at the clinic, ensuring that [c]onsumers sign in and that the professional staff were alerted that the [c]onsumer had arrived for his or her appointment, so

that [c]onsumers were not left waiting for extended periods of time.

d.     Collecting and organizing the files for the [c]onsumers to be seen by the professional staff the day before their scheduled appointment, so that the professional staff did not encounter unnecessary delays while looking for files.

e.     Maintain the confidentiality of the identity of the [c]onsumers, consistent with State and Federal law and regulations.

f.     Supporting the general needs of the professional staff on a daily basis, and professionally interacting with that staff, to achieve the common goal of providing much needed mental health services to the [c]onsumers.

(Doc. 28 at 6-7 ¶¶ 9.a-9.f).

The importance of Ms. Borden's ability to properly perform her job responsibilities was particularly critical given the nature of the operation at issue. AF No. 6.1.[10] The clinic provided much needed mental health services to consumers. AF No. 6.2.[11] These individuals frequently had no other source of treatment or support. AF No. 6.3.[12] Many of them were highly impaired or disturbed, and could potentially

---

[10] Cheaha has adequately supported this fact through Ms. Atkinson's affidavit. In contrast, Ms. Borden's attempted challenge lacks any evidentiary reference and, thus, fails to create a material factual dispute.

[11] Cheaha has adequately supported this fact through Ms. Atkinson's affidavit. In contrast, Ms. Borden's attempted challenge lacks any evidentiary reference and, thus, fails to create a material factual dispute.

[12] Cheaha has adequately supported this fact through Ms. Atkinson's affidavit. In contrast, Ms. Borden's attempted challenge lacks any evidentiary reference and, thus, fails to create a material factual dispute.

represent a risk to themselves or others if they were not properly and timely treated. AF No. 6.4.[13]

There were numerous severe issues with Ms. Borden's performance of critical elements of her job responsibilities in the months leading up to her termination. AF No. 7.1.[14] Kathleen Robinson ("Ms. Robinson"), the Human Resources Coordinator for Cheaha, prepared a chronological summary of Ms. Borden's work-related problems and those underlying records are attached to Ms. Atkinson's affidavit. AF No. 7.2;[15] (*see also* Doc. 28 at 19-72 (attaching chronological history of performance problems)). As summarized by Ms. Atkinson's affidavit, these job deficiencies included but were not limited to the following:

a.    The telephone was not being properly answered, including occasions where Ms. Borden completely abandoned the telephone, resulting in no one answering the phone.

b.    Failing to properly manage the scheduling and rescheduling of [c]onsumer appointments, resulting in [c]onsumers not being seen and treated on a timely basis, and complaints from at least one [c]onsumer

---

[13]  Cheaha has adequately supported this fact through Ms. Atkinson's affidavit. In contrast, Ms. Borden's attempted challenge lacks any evidentiary reference and, thus, fails to create a material factual dispute.

[14]  Cheaha has adequately supported this fact through Ms. Atkinson's affidavit. In contrast, Ms. Borden's attempted challenge lacks any evidentiary reference and, thus, fails to create a material factual dispute.

[15]  Cheaha has adequately supported this fact through Ms. Atkinson's affidavit and Ms. Borden's compilation of records. In contrast, Ms. Borden's attempted challenge lacks any evidentiary reference and, thus, fails to create a material factual dispute.

that Ms. Borden told them that they could not get an appointment anytime soon.

c. Failing to alert the professional staff that [c]onsumers were in the waiting area, resulting in [c]onsumers waiting unnecessarily for an extended period of time and resulting in the professional staff not being utilized to its fullest extent.

d. Failing and refusing to collect and organize the [c]onsumer files for the next day's appointments, resulting in disruption of the professional staff seeing and treating [c]onsumers efficiently.

e. Failing to follow [Cheaha] protocol for protection of the [c]onsumers' identities.

f. Failing and refusing to interact in a professional manner with the professional staff. The professional staff complained that when [Ms.] Borden was asked to perform essential tasks associated with her job, she responded in a rude and offensive manner and/or refused the request, acts of insubordination.

AF No. 7.3.[16]

---

[16] Cheaha has adequately supported these facts through Ms. Atkinson's affidavit and Ms. Robinson's compilation of records. In contrast, most of Ms. Borden's attempted challenges to Cheaha's facts concerning her poor performance lack any evidentiary references and, thus, fail to create a material factual dispute for that reason. Other times, the Court is unable to readily tell what a document referenced by Ms. Borden represents and Ms. Borden has not otherwise explained the importance of the document. (*See, e.g.*, Doc. 38 at 9 ¶ 7A (directing Court to review handwritten page no. 73 (doc. 39 at 78) when contents and context of picture are uncertain); (Doc. 38 at 9 ¶ 7A (directing Court to review handwritten page no. 74 (doc. 39 at 79) when contents and context of picture are uncertain); Doc. 38 at 10 ¶ 7F (directing Court to review handwritten page nos. 76-77 (doc. 39 at 81-82) when the contents and context of pictures are uncertain)).

While the email dated September 10, 2014 handwritten page no. 67 (doc. 39 at 72) does indicate Ms. Borden's belief that she was not getting the assistance she needed with answering the telephone, she has not directly refuted Cheaha's concern over her mishandling of the phone and, at times, leaving it unmanned. Similarly, undated handwritten page nos. 68-71 (doc. 39 at 73-76) do not adequately refute that Ms. Borden failed to alert professional staff about consumers in the

Ms. Borden was counseled numerous times in the months leading up to her termination. AF No. 8.[17] Despite repeated efforts to encourage and counsel Ms. Borden to do a better job, she failed or refused to improve. AF No. 9.1.[18] In fact, she refused to acknowledge any of her shortcomings and instead blamed her performance issues on others and/or claimed that the demands of the job were too much for her. AF No. 9.2.[19]

---

waiting area. At best, those reproduced text messages show that Ms. Borden properly did so once or twice as opposed to on a consistent basis. Ms. Borden additionally relies upon handwritten page no. 98 (doc. 39 at 103)–an undated communication to an unknown person–in an effort to show that she did not "fail to interact with professional staff in a professional manner." (Doc. 38 at 10 ¶ 7F). Assuming that this note was for one of Cheaha's professional employees, a lone example, once again, does not establish that Ms. Borden did act professionally on a <u>regular</u> basis. Finally, while the writings signed by Julie W. Butler ("Ms. Butler") and Pamela Martin, LPN ("Ms. Martin") do suggest that Ms. Borden demonstrated professionalism on a consistent basis (*see* Doc. 38 at 10 ¶ 7F (directing Court to review page nos. 10-11 of Exhibit C (*i.e.*, doc. 38 at 31-32)), that witness-based evidence is not presented in the form of an affidavit or declaration and does not otherwise comply with FED. R. CIV. P. 56(c)(4). Consequently, Ms. Borden has failed to "set out facts that would be admissible in evidence" *id.* and/or to present any material dispute as to Cheaha's facts concerning her poor job performance.

[17] Cheaha has adequately supported this fact through Ms. Atkinson's affidavit and Ms. Robinson's compilation of records. In contrast, Ms. Borden's attempted challenge lacks any evidentiary reference and, thus, fails to create a material factual dispute.

[18] Cheaha has adequately supported this fact and AF No. 9.2 through Ms. Atkinson's affidavit and Ms. Robinson's compilation of records. Further, Ms. Borden's evidentiary references (doc. 38 at 11 ¶ 9) are inadequate to support her attempt to create a material factual dispute. The Court has already discussed above the insufficiency of the September 10, 2014, email (doc. 39 at 72 (handwritten page no. 67)). To the extent that the undated, reproduced text messages (doc. 39 at 99-101 (handwritten page nos. 94-96)) reflect a misunderstanding about a locked/unlocked door involving Ms. Borden, it does not refute that she was, nevertheless, counseled numerous times prior to being terminated or that she refused to accept and/or improve upon her performance-related shortcomings.

[19] *See* footnote 18.

All of this culminated on December 3, 2014, when both Ms. Atkinson and Ms. Robinson attempted to call the Talladega office from the Administrative Office in Sylacauga and nobody answered the phone. AF No. 10.1.[20] This situation was deemed so critical that both Ms. Atkinson and Ms. Robinson left their office in Sylacauga and drove to Talladega to see what was going on there. AF No. 10.2.[21] When they arrived at the Talladega location, they asked Ms. Borden why she had not been answering the phone. AF No. 10.3.[22] She told them that she left the phone in order to attend to other tasks as directed by the professional staff. AF No. 10.4.[23] Ms. Borden claimed that she needed to go to an area where she could not hear the phone ring in order to complete this task. AF No. 10.5.[24]

---

[20] Cheaha has adequately supported this fact through Ms. Atkinson's affidavit and Ms. Robinson's compilation of records. In contrast, Ms. Borden's attempted challenge lacks any evidentiary reference and, thus, fails to create a material factual dispute.

[21] Cheaha has adequately supported this fact through Ms. Atkinson's affidavit and Ms. Robinson's compilation of records. In contrast, Ms. Borden's attempted challenge lacks any evidentiary reference and, thus, fails to create a material factual dispute.

[22] Cheaha has adequately supported this fact through Ms. Atkinson's affidavit and Ms. Robinson's compilation of records. In contrast, Ms. Borden's attempted challenge lacks any evidentiary reference and, thus, fails to create a material factual dispute.

[23] Cheaha has adequately supported this fact through Ms. Atkinson's affidavit and Ms. Robinson's compilation of records. In contrast, Ms. Borden's attempted challenge lacks any evidentiary reference and, thus, fails to create a material factual dispute.

[24] Cheaha has adequately supported this fact through Ms. Atkinson's affidavit and Ms. Robinson's compilation of records. In contrast, Ms. Borden's attempted challenge lacks any evidentiary reference and, thus, fails to create a material factual dispute.

Given the history of her poor job performance, her failure to improve despite repeated counseling, and the events of that day, Ms. Atkinson, Ms. Robinson, and Karen McKinney ("Ms. McKinney"), the Clinical Director of Cheaha's Mental Illness Division, jointly decided that they would place Ms. Borden on paid administrative leave that day pending further investigation into the matter. AF No. 11.1.[25] Thereafter, Ms. Robinson completed an investigation which, among other things, notably revealed that the other staff did not support Ms. Borden's stated reason for abandoning the telephone on December 3, 2014. AF No. 11.2.[26] In fact, the employee that Ms. Borden claimed she was assisting stated that Ms. Borden was doing nothing other than watching her do a specific task. AF No. 11.3.[27] Further, when that other employee asked Ms. Borden what she was doing, Ms. Borden responded by stating something to the effect of: "I am just trying to look busy." AF No. 11.4.[28] Thus, the

---

[25] Cheaha has adequately supported this fact through Ms. Atkinson's affidavit and Ms. Robinson's compilation of records. In contrast, Ms. Borden's attempted challenge lacks any evidentiary reference and, thus, fails to create a material factual dispute.

[26] Cheaha has adequately supported this fact through Ms. Atkinson's affidavit and Ms. Robinson's compilation of records. In contrast, Ms. Borden's attempted challenge lacks any evidentiary reference and, thus, fails to create a material factual dispute.

[27] Cheaha has adequately supported this fact through Ms. Atkinson's affidavit and Ms. Robinson's compilation of records. In contrast, Ms. Borden's attempted challenge lacks any evidentiary reference and, thus, fails to create a material factual dispute.

[28] Cheaha has adequately supported this fact through Ms. Atkinson's affidavit and Ms. Robinson's compilation of records. In contrast, Ms. Borden's attempted challenge lacks any evidentiary reference and, thus, fails to create a material factual dispute.

investigation revealed that Ms. Borden had no legitimate reason for abandoning the phones. AF No. 11.5.[29]

After completing the investigation and giving the matter due consideration, Ms. Atkinson, Ms. McKinney, and Ms. Robinson collectively decided that Ms. Borden should be terminated for unprofessional conduct with fellow employees, neglect of duty which might cause psychological harm to consumers, and insubordination as evidenced by her failure by word or actions to carry out the orders of a supervisor, when such orders were a reasonable part of her job duties. AF No. 12.[30] Ms. Borden was terminated on December 17, 2014, but was paid for administrative leave from December 3, 2014, to December 17, 2014. AF No. 13.

After Cheaha terminated Ms. Borden's employment:

a.      The vacant position was filled with temporary help provided by a temporary employment agency, until a suitable replacement could be found. Ultimately, Ms. Atkinson, Ms. McKinney, and Ms. Robinson (the same decision makers who jointly decided to terminate Ms. Borden) decided to fill this position with a black female.

---

[29] Cheaha has adequately supported this fact through Ms. Atkinson's affidavit and Ms. Robinson's compilation of records. In contrast, Ms. Borden's attempted challenge lacks any evidentiary reference and, thus, fails to create a material factual dispute.

[30] Cheaha has adequately supported this fact through Ms. Atkinson's affidavit and Ms. Robinson's compilation of records. In contrast, Ms. Borden's attempted challenge lacks any evidentiary reference and, thus, fails to create a material factual dispute.

AF No. 15.[31]

Following her termination, Ms. Borden applied for unemployment benefits. AF No. 17.1. Cheaha opposed Ms. Borden's application for unemployment benefits on the basis that she was terminated for employee misconduct. AF No. 17.2. Based upon the parties' submissions, the Alabama Department of Labor deemed Ms. Borden ineligible for unemployment compensation benefits. AF No. 18.

Ms. Borden appealed the Alabama Department of Labor decision and a telephonic hearing before an Administrative Officer was held on April 6, 2015. AF No. 19.1.[32] Ms. Borden (and her counsel at that time) participated in this telephonic hearing, offering testimony and evidence in support of her position. AF No. 19.2.[33] Ms. Robinson also participated in this telephonic hearing and gave testimony. AF No. 19.3.[34] Following the hearing, the Administrative Officer issued a ruling affirming

---

[31] Cheaha has adequately supported this fact through Ms. Atkinson's affidavit. In contrast, Ms. Borden's attempted challenge lacks any evidentiary reference and, thus, fails to create a material factual dispute.

[32] Cheaha has adequately supported this fact through Ms. Atkinson's affidavit. In contrast, Ms. Borden's attempted challenge lacks any evidentiary reference and, thus, fails to create a material factual dispute.

[33] Cheaha has adequately supported this fact through Ms. Atkinson's affidavit. In contrast, Ms. Borden's attempted challenge lacks any evidentiary reference and, thus, fails to create a material factual dispute.

[34] Cheaha has adequately supported this fact through Ms. Atkinson's affidavit. In contrast, Ms. Borden's attempted challenge lacks any evidentiary reference and, thus, fails to create a material factual dispute.

that Ms. Borden was ineligible for unemployment compensation. AF No. 20.

## III.    STANDARDS

### A.    Summary Judgment Generally

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R . CIV. P. 56(a). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to 'come forward with specific facts showing that there is a genuine issue for trial.'" *International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1274 (11th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

### B.    Employment Discrimination

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision[35] was made because of intentional

---

[35] The adverse-<u>employment</u>-action standard does not apply to Title VII retaliation claims as explained in the subsection III.C immediately below.

17

discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000) ("Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981))); *Nix v. WLCY Radio/Rahall Comms.*, 738 F.2d 1181, 1184 (11th Cir. 1984) ("A Title VII disparate treatment plaintiff must prove that the defendant acted with discriminatory purpose." (citing *Clark v. Huntsville City Board of Education*, 717 F.2d 525, 529 (11th Cir. 1983))).

Although the Supreme Court has established the basic allocation of burdens and order of proof in a disparate treatment case, *see, e.g.*, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Burdine*, *supra*; *Desert Palace v. Costa*, 539 U.S. 90, 99-100 (2003), that framework applies only in cases in which there is no direct evidence of discrimination. *See Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987) ("The *McDonnell Douglas-Burdine* patterns of proof were designed to ease the evidentiary burdens on employment discrimin[a]tion plaintiffs, who rarely are fortunate enough to have access to direct evidence of intentional discrimination." (citing *Thornbrough v. Columbus and Greenville R.R.*, 760 F.2d 633, 638 (5th Cir. 1985), *abrogated on other grounds by St. Mary's Honor Center v. Hicks*, 509 U.S.

502 (1993))).[36]

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination. Second, once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must *either* prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action,[37] even though the defendant's legitimate reason may also be true or have played some role in the decision. *McDonnell Douglas*, 411 U.S. at 802-05; *Burdine*, 450 U.S. at 252-54; *Desert Palace*, 539 U.S. at 101-02.

---

[36] As the Eleventh Circuit has explained, "only the most blatant remarks, whose intent could be nothing other than to discriminate [or retaliate] on the basis of age, [race, or some other unlawful reason], . . . constitute direct evidence of discrimination [or retaliation]." *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989) (citing *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 610-11 (11th Cir. 1987)). A liberal reading of Ms. Borden's filings in no way suggests that she has properly presented a direct evidence case of discrimination or retaliation. (Docs. 6, 38, 39). Therefore, Ms. Borden necessarily relies upon the circumstantial-evidence model to support her claims.

[37] The motivating-factor standard does not apply to Title VII retaliation claims, as explained in subsection III.C immediately below.

## C.    Retaliation

"Retaliation against an employee who engages in statutorily protected activity is barred under . . . Title VII . . . ." *Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1257-58 (11th Cir. 2012). Under the *McDonnell Douglas* model, a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of retaliation. Within the Eleventh Circuit:

> A plaintiff establishes a *prima facie* case of retaliation by showing that: (1) she "engaged in statutorily protected activity"; (2) she "suffered a materially adverse action"; and (3) "there was a causal connection between the protected activity and the adverse action." *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010); *accord Davis v. Coca–Cola Bottling Co. Consol.*, 516 F.3d 955, 978 n.52 (11th Cir. 2008).

*Gate Gourmet*, 683 F.3d at 1258.[38]

### First Element–Protected Activity

Concerning the first element, statutorily protected activity triggering coverage under Title VII's antiretaliation provision comes in two forms–opposition-based or participation-based conduct. More specifically, "[a]n employee is protected from discrimination if (1) 'he has opposed any practice made an unlawful employment practice by this subchapter' (the opposition clause) or (2) 'he has made a charge,

---

[38]  *Davis* (which *Gate Gourmet* relies upon) was abrogated on other grounds by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), as stated in *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294 (11th Cir. 2018).

testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter' (the participation clause)." *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1350 (11th Cir. 1999) (on petition for rehearing) (citing 42 U.S.C. § 2000e-(3)(a)).

Concerning the opposition clause more specifically:

[A] plaintiff can establish a *prima facie* case of retaliation under the opposition clause of Title VII if he shows that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices. *See Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989). It is critical to emphasize that a plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented. It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

A plaintiff, therefore, need not prove the underlying discriminatory conduct that he opposed was actually unlawful in order to establish a *prima facie* case and overcome a motion for summary judgment; such a requirement "[w]ould not only chill the legitimate assertion of employee rights under Title VII but would tend to force employees to file formal charges rather than seek conciliation o[r] informal adjustment of grievances." *Sias v. City Demonstration Agency*, 588 F.2d 692, 695 (9th Cir. 1978). *See also Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. Unit A Sept. 1981) ("To effectuate the policies of Title VII and to avoid the chilling effect that would otherwise arise, we are compelled to conclude that a plaintiff can establish a *prima facie* case of retaliatory discharge under the opposition clause of [Title VII] if he shows that he had a reasonable

belief that the employer was engaged in unlawful employment practices."), *cert. denied*, 455 U.S. 1000, 102 S. Ct. 1630, 71 L. Ed. 2d 866 (1982).

*Little v. United Technologies*, 103 F.3d 956, 960 (11th Cir. 1997) (emphasis by underlining added) (alteration added to correctly quote from *Sias*) (footnote omitted).

Regarding the broad coverage afforded under Title VII's participation clause, the Eleventh Circuit has explained:

> Congress chose to protect employees who "participate[ ] in *any* manner" in an EEOC investigation. 42 U.S.C. § 2000e-3(a) (emphasis added). The words "participate in any manner" express Congress' intent to confer "exceptionally broad protection" upon employees covered by Title VII. *See Pettway v. American Cast Iron Pipe Co.*, 411 F.2d 998, 1006 n.18 (5th Cir. 1969). As we pointed out in *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1186 (11th Cir. 1997), "the adjective 'any' is not ambiguous. . . . [It] has an expansive meaning, that is, one or some indiscriminately of whatever kind. . . . [A]ny means all." (internal quotations and citations omitted). Because participation in an employer's investigation conducted in response to a notice of charge of discrimination is a form of participation, indirect as it is, in an EEOC investigation, such participation is sufficient to bring the employee within the protection of the participation clause.

*Clover*, 176 F.3d at 1353.

## Second Element–Materially Adverse Action

As defined by the United States Supreme Court in *Burlington Northern*, a materially adverse action is one that is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination."

*Burlington Northern*, 548 U.S. at 57; *see also Gate Gourmet*, 683 F.3d. at 1259 (same); *id.* at 1260 (finding material adversity in an employer's decision to deny a light-duty position to the plaintiff after she filed and refused to settle an EEOC charge). A materially adverse action can arise within <u>or</u> without the workplace. *See Burlington Northern*, 548 U.S. at 57 ("[T]he antiretaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace.").

## Third Element–Causal Connection

The third element requires proof of a causal connection between the plaintiff's protected activity and the materially adverse action. As a divided Supreme Court held, Title VII retaliation requires proof of customary but-for causation, rather than the less burdensome motivating-factor standard applicable to Title VII discrimination claims:

> Based on these textual and structural indications, the Court now concludes as follows: Title VII retaliation claims must be proved according to <u>traditional principles of but-for causation,</u> not the lessened causation test stated in § 2000e-2(m). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.

*Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) (emphasis added); *cf. id.* at 343 ("An employee who alleges status-based discrimination under Title VII need not show that the causal link between injury and wrong is so close that the injury

would not have occurred but for the act."); *id.* ("It suffices instead to show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision.").

"At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took [a materially] adverse . . . action. The defendant's awareness of the protected statement, however, may be established by circumstantial evidence." *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993) (citations omitted).[39]

## Post-*Prima Facie* Case Considerations

Once a plaintiff establishes a *prima facie* case of retaliation, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its materially adverse decision. If the defendant carries its burden of production, "[t]o survive summary judgment, the employee must come forward with evidence sufficient to permit a reasonable fact finder to conclude that the legitimate reasons given by the employer were not its true reasons, but were a pretext for discrimination [or retaliation]." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005) (citing *Reeves*, 530 U.S. at 143); *see also Reeves*, 530 U.S. at 148 ("[A]

---

[39] Ms. Borden's amended complaint indicates that Ms. McKinney was aware of her participation-based protected activity. (Doc. 6 at 3). Further, Cheaha has not challenged Ms. Borden's retaliation claim on the basis of an absence of awareness.

plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated [or retaliated].").

A plaintiff can prove pretext by showing "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Vessels*, 408 F.3d at 771 (internal quotation marks omitted) (quoting *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006)).

### D.     *Pro Se* Filings

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (citing *Fernandez v. United States*, 941 F.2d 1488, 1491 (11th Cir. 1991)). Accordingly, Ms. Borden's allegations arising out of her former employment with Cheaha are not appropriately subject to dismissal simply because they lack procedural precision or completeness in the context of Rule 8 of the Federal Rules of Civil Procedure.

At the same time "if a [*pro se*] plaintiff pleads merely conclusory allegations [about her claims] and the defendant comes forward with affidavits setting out

specific facts showing [why she cannot prevail on those claims], plaintiff cannot defeat summary judgment or dismissal for failure to state a claim by merely filing an affidavit that restates the conclusory statements asserted in the complaint." *Perry v. Thompson*, 786 F.2d 1093, 1094 (11th Cir. 1986). Similarly, "[i]f material undisputed facts show no cause of action or that summary judgment should be granted as a matter of law, the case can be disposed of[,] [and] [a] plaintiff may not frustrate this process by merely restating legal conclusions that [s]he has alleged." *Id.* at 1094-95. However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint or affidavit must be considered in opposition to summary judgment.[40] *Id.* at 1095.

### E. Evidentiary Rulings

"All evidentiary decisions are reviewed under an abuse-of-discretion standard" without regard to the type of proof challenged. *General Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997); *id.* at 143 (concluding that the Eleventh Circuit Court of Appeals committed reversible error "[i]n applying an overly 'stringent' review to [the district court's experts' testimony] ruling [because] it failed to give the trial court the deference that is the hallmark of abuse-of-discretion review"). "An abuse of discretion can occur where the district court applies the wrong law, follows the wrong

---

[40] Although Ms. Borden <u>signed</u> parts of her amended complaint (doc. 6 at 8, 9), it is not a <u>verified</u> (sworn) pleading. Ms. Borden did sign her EEOC charge (doc. 6 at 10) (attached to her amended complaint) under penalty of perjury.

26

procedure, bases its decision on clearly erroneous facts, or commits a clear error in judgment." *United States v. Estelan*, 156 F. App'x 185, 196 (11th Cir. 2005) (citing *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005)).

Moreover, as the Eleventh Circuit has made clear, not every incorrect evidentiary ruling constitutes reversible error:

> Auto-Owners' second argument is that it is entitled to a new trial on the basis of what it describes as a number of erroneous evidentiary rulings by the district court. Evidentiary rulings are also reviewed under an abuse of discretion standard. *Finch v. City of Vernon*, 877 F.2d 1497, 1504 (11th Cir. 1989). Moreover, even if Auto-Owners can show that certain errors were committed, the errors must have affected "substantial rights" in order to provide the basis for a new trial. *See* FED. R. EVID. 103(a). "Error in the admission or exclusion of evidence is harmless if it does not affect the substantial rights of the parties." *Perry*, 734 F.2d at 1446. *See also Allstate Insurance Co. v. James*, 845 F.2d 315, 319 (11th Cir. 1988).

*Haygood v. Auto-Owners Ins. Co.*, 995 F.2d 1512, 1515 (11th Cir. 1993). Therefore, even the existence of many evidentiary errors does not guarantee the party appealing a new trial. Instead, such erroneous rulings by a district court must "affect the substantial rights of the parties" for reversible error to occur.

## IV. ANALYSIS

### A. Cheaha's Second Strike Motion

Cheaha seeks to strike Ms. Borden's opposition to its Rule 56 Motion (Docs. 38, 39) (either in whole or in part) from the record. (Doc. 42 at 4). Cheaha asserts a

variety of different reasons to support this relief, including Ms. Borden's failure to comply with Appendix II of the Court's Uniform Initial Order. (*Id.* at 2 ¶ 5).

As set out above, this Court is obligated to apply a less demanding standard to Ms. Borden's filings as she is a *pro se* litigant. Given that overarching principle, the Court finds that Ms. Borden has at least attempted to comply with Appendix II and that her corrected opposition to summary judgment is easier to understand than her initial one. Consequently, the Court is not inclined to strike Doc. 38 or Doc. 39 entirely from the record. Accordingly, that part of Cheaha's Second Strike Motion is **DENIED**.

However, the Court does agree with Cheaha (doc. 42 at 3 ¶ 8) that Ms. Borden's various attempts to provide an opposing affidavit are procedurally infirm and cannot be considered as evidence in support of her case. (*See* Doc. 39 at 3 (failing to set out any facts relevant to her claims and/or neglecting to confirm the truthfulness of her attempted affidavit's contents through a sworn signature); *id.* at 61 (attempting to subject the entire contents of Doc. 39 to a non-compliant affidavit appearing on the last page that lacks a sworn signature)); *see also* FED. R. CIV. P. 56(c)(4) (describing procedural requirements for Rule 56 affidavits). To that limited extent the Second Strike Motion is **GRANTED** and Ms. Borden's two purported affidavits are **HEREBY STRICKEN**. Consequently, the Court will not treat any statements made

by Ms. Borden in her opposition as evidence, but instead will consider their value from an argument-only perspective.

**B.     Cheaha's Rule 56 Motion**

> **1.     Ms. Cheaha's Amended Complaint Is Limited to Race Discrimination and Participation-Based Retaliation.**

Cheaha describes Ms. Borden's lawsuit as one "pursuing claims based upon race discrimination and retaliation." (Doc. 35 at 7).[41] Cheaha also indicates its belief that, in light of her amended complaint, "Ms. Borden has abandoned any claim of religious discrimination or [religious-based] retaliation." *Id.*; (*compare* Doc. 6 at 4 (mentioning only race discrimination and retaliation under Title VII and § 1981), *with id.* at 10 (attaching EEOC charge with "RACE", "RELIGION", and "RETALIATION" boxes marked as claims at issue in her administrative case before the EEOC)).

Ms. Borden's allegations included in her amended complaint do not reference anything related to religion. Instead, Ms. Borden summarizes that she was "subjected to discriminatory and retaliatory treatment . . . due to [her] race and because [she] had filed an EEOC [Charge] of Discrimination . . . ." (Doc. 6 at 4). Additionally in the "Relief" section she seeks to have a "judgment compelling Cheaha . . . [to] [r]efrain

---

[41]  All page references to Doc. 35 correspond with the Court's CM/ECF numbering system.

from discriminating against African Americans and those who engage in activities protected under the law[.]" (Doc. 6 at 8). Further, nowhere in her response to Cheaha's "**STATEMENT OF THE CASE**" does Ms. Borden dispute Cheaha's understanding of the scope of her amended complaint. (Doc. 38 at 3-5).

Consequently, the Court agrees with Cheaha that Ms. Borden has abandoned any religious-based claims of discrimination and retaliation to the extent that she ever intended to pursue them in this action. *See, e.g.*, *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned when argument not presented in initial response to motion for summary judgment); *Bute v. Schuller International, Inc.,* 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) (finding unaddressed claim abandoned); *see also Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (failure to brief and argue issue at the district court is sufficient to find the issue has been abandoned); *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995) ("[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."); *Hudson v. Norfolk Southern Ry. Co.,* 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." (citing *Dunmar*, 43 F.3d at 599)); *cf. McMaster v. United States,* 177

F.3d 936, 940-41 (11th Cir. 1999) (claim may be considered abandoned when district court is presented with no argument concerning a claim included in the plaintiff's complaint); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.,* 10 F.3d 1563, 1568 (11th Cir. 1994) (concluding that a district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment").

The Court now turns to an analysis of Ms. Borden's race discrimination and participation-based retaliation claims.

### 2. Summary Judgment Is Appropriate on Ms. Borden's Discriminatory Discipline and Discharge Claims Based on Race.

Cheaha initially challenges Ms. Borden's ability to support a *prima facie* case of discriminatory discharge due to race. (Doc. 35 at 16). Cheaha contends that because it "ultimately replaced her with a member of her own race[,]" Ms. Borden's discriminatory discharge claim must fail. (Doc. 35 at 17). A plaintiff can support a discriminatory discharge claim arising under Title VII or § 1981[42] by proving: "(1)

_____

[42] The Court evaluates Ms. Borden's comparable § 1981 claims under the Title VII framework. *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1325 n.14 (11th Cir. 2011) ("Title VII and § 1981 have the same requirements of proof and utilize the same analytical framework." (citing *Brown v. Am. Honda Motor Co.*, 939 F.2d 946, 949 (11th Cir. 1991)); *see also Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) ("[T]he analysis of disparate treatment claims under [§ 1981 by and through] § 1983 is identical to the analysis under Title VII where the facts on which the claims rely are the same.").

that [s]he was a member of a protected class, (2) that [s]he was qualified for the position, (3) that [s]he was fired, and (4) that [s]he was replaced by one outside the protected class." *Hawkins v. Ceco Corp.*, 883 F.2d 977, 982 (11th Cir. 1989). Cheaha is correct that Ms. Borden cannot rely upon the *Hawkins* model given the uncontroverted fact that she and her replacement are both within the same racially-protected category.

However, that is not the only *prima-facie* formulation available to Ms. Borden to support her discriminatory discharge claim. *See id.* ("There are a number of ways of establishing a *prima facie* case pursuant to *McDonnell-Douglas*."). For example, she can also make out a *prima facie* case by "show[ing] that [s]he is a member of a protected class, that [s]he was qualified for the job from which [s]he was fired, and 'that the misconduct for which [she] was discharged was nearly identical to that engaged in by [an employee outside the protected class] whom [the employer] retained.'" *Nix*, 738 F.2d at 1185 (quoting *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir. 1982)). Under this construct, "[t]he *prima facie* case is established even if the plaintiff's replacement is also a member of the protected class." *Nix*, 738 F.2d at 1185.

A plaintiff can alternatively show "that [s]he did not violate the work rule[.]" *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989). *See also Green v.*

*Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980) ("With respect to discharge for violation of work rules, the plaintiff must first demonstrate by a preponderance of the evidence either that he did not violate the rule or that, if he did, white employees who engaged in similar acts were not punished similarly.").[43] A plaintiff may also utilize these two additional *prima-facie* models when complaining about disparate treatment in discipline that falls short of discharge. *See Gerwens*, 874 F.2d at 1540 (describing holding as applicable to "cases involving alleged racial bias in the application of discipline for violation of work rules").

However, even a liberal reading of Ms. Borden's amended complaint does not satisfy either one of these alternative models. As an initial matter, Ms. Borden's allegation that she endured discriminatory discipline presents no triable claim, as she fails to offer a sufficient description of those circumstances. For example, Ms. Borden merely vaguely states in her EEOC charge that she "[o]ften ha[d] to do the jobs of others" and that she was "disciplined if their jobs [were] not done." (Doc. 6 at 10).

Not all discipline qualifies as an adverse employment action under Title VII. *See, e.g., Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001) (holding that "to prove adverse employment action in a case under Title VII's

---

[43]   In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions, or privileges of employment") (emphasis in original), *overruled on other grounds as recognized by Crawford*, 529 F.3d at 974; *Davis*, 245 F.3d at 1240 (concluding that neither "negative job performance memoranda placed in [a] file" nor "changes in . . . work assignments" without "any economic injury" are sufficiently adverse to trigger Title VII protection against discrimination). Thus, Ms. Borden must have experienced discipline that rises to the level of a tangible job detriment to pass *prima-facie* muster when claiming discriminatory treatment. *See id.* at 1239 ("Although the statute does not require proof of direct economic consequences in all cases, the asserted impact cannot be speculative and must at least have a <u>tangible adverse effect on the plaintiff's employment</u>.") (emphasis added).

Ms. Borden's placement on paid administrative leave (which Ms. Borden refers to as a suspension) on December 3, 2014, is the only pre-termination discipline that Ms. Borden identifies with any degree of detail. While the Court has doubts about whether such discipline constitutes an adverse employment action given the absence of any economic consequences for Ms. Borden, even if it does, she still cannot establish a *prima facie* case based upon that pre-discharge treatment. Ms. Borden's discharge, on the other hand, is undoubtedly an adverse employment action within the meaning of Title VII discrimination. Nonetheless, Ms. Borden's *prima facie* case of

discriminatory discharge fails on the merits for the same reasons her discriminatory discipline claim does.

In particular, Ms. Borden has not provided <u>evidence</u> of a <u>specific</u> white employee who was accused of nearly identical poor performance, but who (in contrast to Ms. Borden) was neither placed on paid administrative leave nor fired for that comparable misconduct. (*See, e.g.*, Doc. 6 at 10 ("Other Black or White employees are not disciplined.")). In fact, Ms. Borden's statements in her EEOC charge that she was "the <u>only</u> employee who [was] disciplined" and that <u>both</u> black and white employees received more favorable treatment than she did, actually undermine her reliance upon comparator evidence to establish a *prima facie* case. (Doc. 6 at 10 (emphasis added)). The pattern of disciplinary treatment Ms. Borden alleges indicates that Ms. Borden was not singled out for discipline <u>because of her race</u>; otherwise, her black co-workers would have received harsher treatment like she allegedly did.

Ms. Borden also has not adduced evidence from which a reasonable jury could conclude that she did not engage in the conduct which led to her paid-administrative-leave status or her discharge. Importantly, Ms. Borden's unsubstantiated and subjective belief (no matter how strong) that her performance was acceptable and did not warrant any disciplinary action is simply not enough to establish a *prima facie* case of race discrimination. *Cf., e.g., Holifield v. Reno*, 115 F.3d 1555, 1564 (11th

35

Cir. 1997) ("While Holifield has testified that he felt discriminated against, his opinion, without more, is not enough to establish a *prima facie* case of race discrimination.") (emphasis added).

Evidence of a decisionmaker's racial bias (depending upon its adequacy) can also support a *prima facie* case of race discrimination. However, Ms. Borden points to no examples of racially-based comments or jokes attributable to those supervisors who were responsible for placing her on leave and firing her. Accordingly, Cheaha's Rule 56 Motion is due to be granted because Ms. Borden cannot establish a *prima facie* case of race discrimination concerning discipline or discharge. *Cf. Burke-Fowler v. Orange County*, 447 F.3d 1319, 1325 (11th Cir. 2006) ("Because she failed to establish valid comparators and presented no other circumstantial evidence suggesting racial discrimination, Burke-Fowler did not establish a *prima facie* case of race discrimination." (citing *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000)).

Cheaha alternatively asserts that, even if Ms. Borden is able to present a *prima facie* case of race discrimination, she is unable to demonstrate pretext. (Doc. 35 at 17, 19-20). As explained by Ms. Atkinson in her affidavit, she, Ms. McKinney, and Ms. Robinson jointly decided to place Ms. Borden on paid administrative leave on December 3, 2014. (Doc. 28 at 8 ¶ 15). They took that measure "[g]iven the history

of [Ms. Borden's] poor job performance, her failure to improve despite repeated counseling and the events of that day [related to the telephone]." *Id.*

Ms. Atkinson, Ms. McKinney, and Ms. Robinson were also the supervisors who decided to fire Ms. Borden. (Doc. 28 at 9 ¶ 16). As sworn to by Ms. Atkinson in her affidavit, the reasons for that joint decision included Ms. Borden's "unprofessional conduct"; "neglect of duty which might cause psychological harm to [c]onsumers"; and "insubordination". *Id.* Cheaha not only has articulated its performance-based reasons for placing Ms. Borden on leave and discharging her, but also has substantiated that reasoning with undisputed sworn evidence as well as underlying documentary proof of Ms. Borden's performance issues.

The Court agrees with Cheaha that Ms. Borden has failed to present evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Vessels*, 408 F.3d at 771. Ms. Borden's personal disagreement with being placed on involuntary leave and ultimately discharged is, by itself, <u>not</u> sufficient to demonstrate pretext. Given Cheaha's "documentary evidence of misconduct and insubordination that demonstrate poor performance, [Ms. Borden]'s assertions of h[er] own good performance are insufficient to defeat summary judgment, in the absence of other evidence." *Holifield*,

115 F.3d at 1565.

Also, even if the Court were to accept the unsworn writings signed by Ms. Butler and Ms. Martin as evidence that Ms. Borden demonstrated professionalism on a consistent basis, Ms. Borden still lacks proof of pretext concerning Cheaha's other reasons for its adverse employment action(s). *See Chapman v. AI Transp.*, 229 F.3d 1012, 1024-25 (11th Cir. 2000) ("If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether <u>each</u> of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." (emphasis added) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997))). Thus, Ms. Borden's efforts to show pretext are, at best, only partially successful and, regardless, legally inadequate.

Alternatively, Ms. Borden can respond to Cheaha's satisfaction of its burden of production "by present[ing] other evidence to show that discriminatory intent was more likely the cause of [Cheaha]'s actions." *Nix*, 738 F.2d at 1184 (citing *Burdine*, 450 U.S. at 256). Here, Ms. Borden has presented nothing of that nature and she lacks sufficient evidence of a triable claim of race discrimination. Therefore, even if Ms. Borden had established a *prima facie* case of discriminatory discipline and/or discharge, her claim(s) would still independently fail under the Title VII framework applicable post-*prima facie* case.

### 3. Summary Judgment Is Appropriate on Ms. Borden's Retaliatory Discipline and Discharge Claims.

Ms. Borden also maintains that she suffered materially adverse actions in the form of retaliatory discipline and retaliatory discharge. The protected activity that Ms. Borden relies upon is an EEOC charge claiming race discrimination that she filed against Cheaha on October 14, 2010. (Doc. 6 at 3). Ms. Borden is claiming participation-based retaliatory treatment for the period beginning August 18, 2014, and ending on December 17, 2014.[44] (Doc. 6 at 10).

As the Supreme Court has instructed, in order to rely solely upon "temporal proximity between an employer's knowledge of protected activity and a[] [materially] adverse . . . action as sufficient evidence of causality to establish a *prima facie* case [of retaliation] . . . [the knowledge and materially adverse action] must be 'very close[.]'" *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (quoting *O'Neal*

---

[44] Here, the scope of Ms. Borden's amended complaint is limited to participation-based retaliation only. (*See* Doc. 6 at 3 (claiming differing treatment on the basis of an earlier EEOC charge of discrimination filed in October 2010); *id.* at 4 (asserting retaliatory treatment because of her prior EEOC charge)). Ms. Borden does, however, assert in her 2014 EEOC charge of discrimination (attached to her amended complaint) that she "complained to Human Resources about the treatment [she was] subjected to but nothing was done." (Doc. 6 at 10). To the extent that this statement could support a Title VII opposition-based retaliation claim, the Court finds that Ms. Borden has abandoned any pursuit of it consistent with those cases cited in subsection IV.B.1 above. Alternatively, such an opposition-based claim fails because Ms. Borden has neither shown how her report to human resources supports a *prima facie* case of retaliation–consistent with those cases discussed in subsection III.C above–nor otherwise demonstrated a triable issue post-*prima facie* case–consistent with those cases discussed in subsection IV.B.2 above–concerning pretext and/or retaliatory intent in Cheaha's treatment of her because of that arguable protected activity.

39

*v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)). *Breeden* further confirms that evidence of a 3-month (or longer) lapse in time (without more) is legally inadequate to show a causal connection. *See Breeden*, 532 U.S. at 273-74 (citing with approval authorities finding that a gap of 3 or 4 months is insufficient as a matter of law).

The only evidence that Ms. Borden has to establish a causal connection is temporal proximity. However, the lapse of time between her filing of the EEOC charge in 2010 and her first instance of any arguable retaliatory treatment claimed in this lawsuit is 3 years and 10 months. The passage of time tied to her discharge is even longer–over 4 years. Thus, bound by *Breeden*, this Court finds that Ms. Borden lacks adequate evidence of a causal connection and she cannot establish a *prima facie* case of participation-based retaliation. *See also Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ("Thomas failed to present evidence from which a reasonable jury could find any causal connection between her April 2005 complaint(s) of sexual harassment and the termination of her employment three (3) months later in July 2005.") (emphasis added).

Cheaha alternatively asserts that, even if Ms. Borden is able to present a *prima facie* case of retaliation, she is unable to demonstrate pretext. (Doc. 35 at 17, 19-20). The Court agrees with Cheaha that Ms. Borden's evidence of pretext concerning

retaliation is deficient for those same reasons that apply to her race discrimination claims. Alternatively, Ms. Borden otherwise lacks sufficient evidence that retaliation was the but-for reason behind Cheaha's treatment of her. Therefore, even if Ms. Borden had established a *prima facie* case of retaliatory discipline and/or discharge, her claim(s) would still independently fail post-*prima facie* case.

### 4. Summary Judgment Is Appropriate on Ms. Borden's Religious-Based Claims.

To the extent that Ms. Borden's amended complaint could be construed to still include Title VII religious-based claims, the Court alternatively finds that summary judgment is appropriate on them too.

As stated in her EEOC charge:

> During one meeting, my supervisor, Karen McKinney, accused me of lying. I said I was raised correctly and my parents are Christians. Cindy Atkinson, the Director, told me that [my statement] could be offensive and there are consequences for saying things like that.

(Doc. 6 at 10). Ms. Borden further indicates (in that same administrative document) her belief that she "has been discriminated against based on . . . [her] religion (Protestant) . . . [and that she] did not request religious accommodation." *Id.* Thus, Ms. Borden's Title VII religious claims are not based on a failure of Cheaha to accommodate a religious-based request made by Ms. Borden.

The Eleventh Circuit has confirmed that *McDonnell Douglas* applies to

religious disparate treatment claims arising under Title VII. *See Lubetsky v. Applied Card Sys., Inc.*, 296 F.3d 1301, 1305 (11th Cir. 2002) (applying *McDonnel Douglas* to a failure-to-hire claim based on the applicant's religious status). Within her EEOC charge (or elsewhere within her amended complaint), Ms. Borden does not ever assert that she was treated more harshly than other non-Christians or non-Protestants employees at Cheaha, much less identify a specific comparator to support a *prima facie* case of religious discrimination.

Ms. Borden also lacks proof from which a jury could reasonably conclude that she did not engage in the conduct that resulted in her being placed on administrative leave and ultimately discharged. Therefore, Ms. Borden's religious discrimination claims are prima facially flawed in the same manner as her race discrimination claims.

Further, to the extent that Ms. Atkinson's (arguably) religious-based statement made to Ms. Borden could potentially establish a *prima facie* case of religious discrimination in terms of Cheaha's discipline and discharge decisions, Ms. Borden has not satisfied her pretext burden. Akin to her race and retaliation claims, she lacks evidence that casts doubt upon or undermines Cheaha's multiple reasons for placing her on involuntary leave and discharging her.

Alternatively, Ms. Borden otherwise lacks evidence that creates a triable issue regarding her religious status as a motivating factor behind either one of those

decisions. Therefore, even if Ms. Borden had established a *prima facie* case of religious discrimination, her claim(s) would still independently fail under a post-*prima facie* case evaluation.

## V.    CONCLUSION

As a result of the above analysis, Cheaha's Second Strike Motion is due to be granted in part and otherwise denied. Further, Cheaha's Rule 56 Motion is due to be granted in part and otherwise termed as moot.[45] Finally, in the absence of any pending claims remaining, the Court will enter a separate final judgment order dismissing Ms. Borden's lawsuit with prejudice.

---

[45] Several propositions relied upon by Cheaha to support its Rule 56 Motion either lack the development necessary to trigger the Court's consideration (much less to be persuasive) or are incorrect statements of currently applicable law. Given the ruling in Cheaha's favor for other reasons, the Court finds it unnecessary to reach any of those attempted points. Those unaddressed issues include Cheaha's Title VII untimeliness contention tied to the inadequacy of Ms. Borden's initial filing and a lapse of over 90 days until she filed her amended complaint (doc. 35 at 24-25) and its argument that "[t]he Alabama Department of Labor's findings compel the conclusion that [it] had legitimate non-discriminatory reasons for any adverse action against [Ms.] Borden" due to estoppel. (Doc. 35 at 18). *See Maner v. Linkan LLC*, 602 F. App'x 489, 491-92 (11th Cir. 2015) (affirming district court's exclusion of time attorneys spent litigating matters related to plaintiff's application for state unemployment benefits, because those hours "concerned a discrete state administrative proceeding and not her federal Title VII lawsuit," and were not "necessary" or "related" to her federal litigation). Cheaha's mistatements about the law include that pretext requires a showing of both the falsity of the employer's stated reason and that discrimination (or retaliation) was the real reason (doc. 35 at 21) (the so-called pretext-plus model overruled by the Supreme Court in *Reeves*) or that a retaliation claim must be supported by a tangible adverse employment action (doc. 35 at 22-23) (applicable standard for Title VII retaliation claims (as opposed to discrimination claims) modified by the Supreme Court in *Burlington Northern*).

**DONE** this the 22nd day of March, 2018.

VIRGINIA EMERSON HOPKINS
United States District Judge